UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LERAY HERNDON,<br><br>                                    Plaintiff,<br><br>v.<br><br>IMPERIAL COUNTY, CALIFORNIA,<br>by and through its Board of Supervisors,<br>CALIPATRIA STATE PRISON,<br>J.JANDA, FRANK X. CHAVEZ; W.L.<br>MONTGOMERY, JAMES HATFIELD,<br>H.L. DRAKE; B.W. BARGAINER,<br>C.IMADA, D.W. BELL, A. LARA,<br>R.HOPPER, S. ANDERSEN; JEFFREY<br>A. BEARD, DOES 1 THROUGH 100,<br><br>                                    Defendant. | Case No.:  14-cv-709-GPC-PCL<br><br>**REPORT AND<br>RECOMMENDATION GRANTING<br>IN PART AND DENIYING IN PART<br>DEFENDANTS' MOTION TO<br>DISMISS** |

## I. INTRODUCTION

Plaintiff Michael Leray Herndon ("Plaintiff"), a state prisoner, has filed a civil rights Complaint pursuant to 48 U.S.C. §§ 1983, 1985, and 1986 alleging violations resulting from an incident occurring on February 26, 2013. (Doc. 1.) Presently before this Court is a Motion to Dismiss the Complaint submitted by the indisputably served Defendants A. Lara,

1  J. Hatfield, H. Drake, W. Montgomery, F. Chavez, and Calipatria State Prison
2  ("Defendants")[1]. (Doc. 23-1.)

3        The Honorable Gonzalo P. Curiel has referred the matter to the undersigned Judge for
4  Report and Recommendation pursuant to 29 U.S.C. § 63(b)(1)(B) and Local Civil Rule
5  72.1(c)(1)(d). After a thorough review of the pleadings and supporting documents, this
6  Court recommends the Motion to Dismiss be **GRANTED**.

7                        **II. FACTUAL ALLEGATIONS[2]**

8        Plaintiff is an inmate currently incarcerated at Calipatria State Prison ("Calipatria").
9  (Doc. 1 at 14-15.) Plaintiff alleges that on February 26, 2013, Defendant B.W. Bargainer
10  ("Bargainer"), a Control Booth Officer at Calipatria, released Plaintiff from the "lower A
11  section" of the prison shower to return to his cell for standing count. (Id. at 15.) At the same
12  time, an inmate in cell C3-101 requested to be released from the cell for medical treatment
13  of an established knee injury. (Id. at 17.) Contrary to California Department of Corrections
14  and Rehabilitation ("CDCR") policy, Bargainer released the two inmates housed in cell
15  C3-101 before Plaintiff was secured in his cell. (Id.) The two inmates from C3-101 then
16  attacked Plaintiff. All three inmates were transported to the hospital with serious injuries.

17

18  _____

19

20  [1] As of [August 11, 2016], Defendants A. Lara, J Hatfield, H. Drake, W. Montgomery, F. Chavez, and
     Calipatria State Prison are represented by the Attorney General of California. While executed returns
21  have been docketed for Defendants C. Imada (Doc. 17.) and B. Bargainer (Doc. 18.), no appearances
     have been made on their behalf and they do not join this Motion. In their Motion to Dismiss, Defendant
22  indicates that Defendants Bargainer and Imada have not been served, despite the docket entries to the
     contrary. (Doc. 23-1 at 8.)
23

24  [2] Neither the Complaint nor Plaintiff's response in opposition to the Motion to Dismiss contain a
     statement of facts or dedicated factual background section detailing the "incidents" which Plaintiff
25  contends are the basis for his lawsuit. Therefore, the following facts are pieced together from the
     exhibits incorporated into Plaintiff's Complaint, most of which have been mislabeled, and are, however,
26  accepted as true for the purpose of this Motion. See Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th
     Cir. 2007) (In ruling on a motion to dismiss, the court must "accept all material allegations of fact as
27  true.").

28

(Id.) Two inmate-produced weapons were found at the scene of the attack. (Id. at 33.) Plaintiff now suffers from a permanent injury to his left thumb and chest. (Id. at 17.)

After the incident, Lieutenant J. Hatfield ("Hatfield") issued Plaintiff a Rules Violation Report to "cover up" Bargainer's violation of CDCR policy. (Id. at 17.) Hatfield also investigated Bargainer's alleged misconduct. (Id. at 18.)

On March 29, 2013, Plaintiff filed an initial CDCR 602 inmate grievance. (Id. at 6.) Plaintiff filed a first level appeal and a decision was issued on June 18, 2013, which was denied. (Id. at 33-34.)  Plaintiff filed a second level CDCR appeal which was denied in part and granted in part on October 11, 2013. (Id. at 43-45.) Plaintiff then filed a third level CDCR appeal, which was denied on January 7, 2014. (Id. at 47-48.)

Plaintiff filed a Complaint on March 27, 2014. (Doc. 1.) The Complaint names both Imperial County and Calipatria as entity Defendants. Plaintiff sues a number of former and current Calipatria staff in their individual, personal, and official capacities. Former Warden J. Janda is named because he was the Warden "when the incident occurred and during the initial course of the 115 Hearing, Classification and the initial 602 process…." (Id. at 2.) Plaintiff names Frank X. Chavez, the Chief Deputy Warden who "denied Plaintiff's second appeal of the issues." (Id. at 3.) Current Warden W.L. Montgomery served as the Warden "during the course of the third 602 process in this matter." (Id.) Plaintiff names H.L. Drake, a Senior Hearing Officer, who heard Plaintiff's [Rules Violation Report] 115 Hearing and found Plaintiff guilty of the [violation] despite facts, evidence presented and declarations from the allege [sic] victims." (Id.) Officer Bargainer is named as his deliberate indifference toward Plaintiff led to Plaintiff's injuries. (Id. at 3-4.) Correctional Lieutenant Hatfield "charged Plaintiff with Attempted Homicide despite [sic] of the facts and witness statements in this matter." (Id. at 4.) Further, Hatfield, along with Correctional Sergeant C. Imada, "violated CDCR Procedure and Training regarding 'Crime Scene and Evidence Preservation'" denying Plaintiff due process. (Id.) Facility Captain D.W. Bell and Correctional Lieutenant R. Hopper are named as a Senior Hearing Officers. (Id. at 5.) Correctional Sergeant A. Lara, the Investigative Employee assigned to investigate the

1   incident, is named for failing to properly conduct his investigation. (Id.) Last, Jeffrey A.

2   Beard is named as at all relevant times he served as the CDCR Secretary. (Id.)

3         Plaintiff's Complaint alleges that Defendants implemented a policy, custom, usage

4   or practice wherein the rights, privileges or immunities of the Plaintiff were violated. (Id.

5   at 7.) Specifically, Defendants, jointly and severally, engaged in a course of conduct that

6   violated Plaintiff's "right to the equal protection of the laws of the United States of

7   America, the Fourteenth Amendment to the Constitution of the United States of America

8   and the corresponding provisions of the Constitution of the State of Mississippi [sic], the

9   right to procedural and substantive due process of the law pursuant to the Fifth and

10  Fourteenth Amendments to the Constitution of the United States of America, and the right

11  against cruel and unusual punishment pursuant to the Eighth Amendment…." (Id.) The

12  Complaint contains at least four causes of action[3] including: (1) Violation of 42 U.S.C. §

13  1983, (2) Conspiracy to Interfere with Civil Rights pursuant to 42 U.S.C. § 1985, (3)

14  Neglect or Failure to Prevent Conspiracy pursuant to 42 U.S.C. § 1986, and (4) Failure to

15  Adequately Train and Supervise Deputies. (Doc. 1.) Plaintiff claims $5,000,000.00 in

16  damages.

17        Defendants move to dismiss for failure to state a claim, immunity, and failure to

18  exhaust administrative remedies. (Doc. 23-1.)

19  **III. STANDARD OF REVIEW**

20        Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a Plaintiff's

21  claims. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

22  Because Rule 12 focuses on the sufficiency of a claim rather than the claim's substantive

23  merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion

24  to dismiss." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).

25  However, courts may consider exhibits that are attached to the complaint. See Fed. R. Civ.

26

27  _____

28  [3] Page 12 of the Complaint was not filed and may contain other causes of action.

Pro. 10(c); <u>Hal Roach Studios, Inc. Richard Feiner & Co., Inc.</u>, 896 F. 2d 1542, 1555 N.19 (9th Cir 1990) ([M]aterial which is properly submitted as part of the complaint may be "considered" on a Rule 12(b)(6) motion to dismiss)).

A motion to dismiss should be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). In order to overcome a motion to dismiss, a complaint must contain sufficient factual matter such that it states a claim to relief that is plausible on its face. <u>Id.</u> at 548. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

"All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." <u>Cahil v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996). The court is not required to accept legal conclusions in the form of factual allegations if the conclusions detailed cannot be reasonably drawn from the facts put forth. <u>Clegg v. Cult Awareness Network</u>, 18F.3d 752, 755 (9th Cir. 1994); see also <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) (on motion to dismiss, court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "[T]he pleading standard Rule 8 does not require 'detailed factual allegations.' But it demands more than an unadorned, the defendant-unlawfully-harmed-me-accusation." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 55).

Well-pleaded factual allegations give rise to a court's assumption of their accuracy, allowing the court to then determine whether they can plausibly allow for an entitlement to relief. <u>Iqbal,</u> 556 U.S. at 679. The plausibility standard does not correspond to the probability requirement, but requires more than a "sheer possibility that a defendant has acted unlawfully." <u>Id.</u> at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id.</u>

Ultimately, in order for a complaint to withstand a motion to dismiss, the non-conclusory factual content and inferences drawn from that content, must make a plausible claim entitling the plaintiff to relief plausible. <u>Moss v. United States Secret Serv.</u>, 572 F.3d 962, 969 (9th Cir. 2009).

## IV. DISCUSSION

A. <u>Failure to State a Claim</u>

### 1. Equal Protection Violation

Plaintiff alleges that Defendants violated his right to equal protection when Bargainer released two inmates into a common area before Bargainer was secured in his cell, resulting in a fight that led to plaintiff's injuries. (Doc. 1 at 7-8.) Defendants contend that Plaintiff has made only conclusory statements in regards to this claim, and therefore the Complaint falls short. (Doc. 23-1 at 12-13.)

To state an Equal Protection Clause of the Fourteenth Amendment claim, a plaintiff must "show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998). However, the Fourteenth Amendment's guarantee of equal protection is not violated by unintentional conduct that may have a disparate impact. <u>Washington v. Davis</u>, 426 U.S. 229, 239 (1976).

Generally prisoners are not a suspect class and any dispute over equal protection should be viewed under a rational basis test. <u>Glauner v. Miller</u>, 184 F.3d 1053, 1054 (9th Cir. 1999). While prisoners themselves are not a suspect class, prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). However, a prisoner bringing an equal protection claim must directly address the nature of the classifying trait, the standard of review to be used, the objective of the law, and whether the classification involves fundamental rights. <u>Heller v. Doe</u>, 509 U.S. 312, 319-21 (1993).

Here, Plaintiff argues that his equal protection rights were violated when Defendants let two other inmates, out of their cell prior to securing Plaintiff in his cell. (Doc. 1 at 15:

17.) Plaintiff claims that Defendants knew that these inmates were a threat to him and were intentionally trying to ensure Plaintiff was injured. (Doc. 1 at 17.) While Plaintiff alleges an equal protection violation in his Complaint, Plaintiff fails to demonstrate that his rights were violated in accordance with the Equal Protection Clause.

The Complaint fails to plead facts which lend themselves to drawing a conclusion of invidious or race-related discrimination. Plaintiff simply writes that his equal protection rights were violated without providing further information as to how. Further, Plaintiff never discusses what standard of review should be utilized in relation to a classifying trait, the objective of the law, nor whether the classification involves fundamental rights.

Without proof that Defendants acted intentionally to discriminate against Plaintiff based upon his membership in a protected class, it is impossible to establish that Defendants' conduct was intentional. Therefore, it is just as possible that Defendants were unintentionally conducting themselves in a way that may have had a disparate impact on Plaintiff, but which does not violate any of Plaintiff's Fourteenth Amendment rights.

Therefore, Defendants' Motion to Dismiss based on equal protection should be **GRANTED**.

### 2. 8th Amendment Violation

Plaintiff alleges that Defendants violated his rights under the Eighth Amendment when they placed him in a situation where Defendants knew Plaintiff would be injured. (Doc. 1 at 17.) Defendants answer that Plaintiff's Complaint fails to provide any facts to support this claim and is merely conclusory. (Doc. 23-1 at 14.)

Prison conditions do not violate the Eighth Amendment unless they amount to "unquestioned and serious deprivations of basic human needs" or the "minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Wilson v. Seiter, 501 U.S. 294, 298-300 (1991). "After incarceration, only the unnecessary and wanton infliction of pain…constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986). "To be cruel and

1  unusual punishment, conduct that does not purport to be punishment at all must involve

2  more than ordinary lack of due care for the prisoners' interest or safety." Id.

3      To assert an Eighth Amendment claim for deprivation of humane conditions of

4  confinement, a prisoner must allege facts sufficient to satisfy both an objective and a

5  subjective requirement. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Allen v. Sakai, 48

6  F.3d 1028, 1087 (9th Cir. 1994). Under the objective requirement, the prisoner must allege

7  facts sufficient to show that the prison official's acts or omissions deprived him of the

8  "minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347; see also Farmer,

9  511 U.S. at 834. This objective component is satisfied so long as the institution "furnishes

10  sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and

11  personal safety. Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); see also Farmer,

12  511 U.S. at 832; Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

13      Under the subjective requirement, the prisoner must allege facts showing that the

14  defendant acted with "deliberate indifference." Wilson, 501 U.S. at 303; Allen, 48 F.3d at

15  1087. "Deliberate indifference" exists when a prison official "knows of and disregards an

16  excessive risk to inmate health and safety; the official must be both aware of facts from

17  which the inference could be drawn that a substantial risk of serious harm exists, and he

18  must also draw the inference." Farmer, 511 U.S. at 837; see also Wilson, 501 U.S. at 302-

19  303.

20      Deliberate indifference lies somewhere between negligence and "conduct engaged

21  in for the very purposes of causing harm or with the knowledge that harm will result."

22  Farmer, 511 U.S. at 836; see also Redman v. County of San Diego, 942 F.2d 1435, 1440

23  (9th Cir. 1991). To succeed on a deliberate indifference claim, a plaintiff must also

24  demonstrate that the prison official had a sufficiently culpable state of mind. Farmer, 511

25  U.S. at 839-40. Thus, an official must: (1) be actually aware of facts from which an

26  interference could be drawn that a substantial risk of harm exists; (2) actually draw that

27  inference; but (3) nevertheless disregard the risk to the inmate's health and wellbeing. Id.

28  at 837-38.

Here, construing the facts in the light most favorable to the Plaintiff, the Court finds that Plaintiff fails to allege a cognizable Eighth Amendment claim. Plaintiff must demonstrate that Officer Bargainer acted with the knowledge that by releasing Plaintiff and the two other inmates at the same time, violence would erupt. Plaintiff's Complaint does not demonstrate any knowledge on the part of Bargainer and instead makes a conclusory statement that Bargainer attempted to ensure that Plaintiff was harmed without providing any facts to support this allegation.

Plaintiff fails to meet the objective requirement, alleging facts that would demonstrate that Bargainer's actions were done solely with the intent to deprive Plaintiff of this Eighth Amendment rights. While Plaintiff does allege details of the incident itself in the exhibits, Plaintiff provides no information in either the Complaint or CDCR appeals contending that any of Bargainer's actions were designed to hurt him.

While it was determined through the CDCR appeal process that Bargainer violated protocol, there was no direct connection alleged that connect of the violation with an intent to deprive Plaintiff of any minimal life necessity. Based on the facts alleged by Plaintiff, it could be just as possible that Bargainer accidentally let the inmates out of their cell, not realizing that Plaintiff was not yet secured within his own.

Plaintiff has not met the three part test to fulfill the subjective requirement necessary to properly assert an Eighth Amendment claim. Plaintiff provides no facts in his Complaint showing that Bargainer's actions amounted to deliberate indifference. Plaintiff fails to meet the first element of the test, as he has provided no information to demonstrate that Bargainer knew letting additional prisoners out of their cell would be an excessive risk to Plaintiff's health or safety. Plaintiff provided no evidence that Bargainer had knowledge of a feud between the other inmates and Plaintiff, aside from a conclusory assertion made by Plaintiff without supporting information.

Plaintiff fails to meet the second element of the test, as he provides no evidence that Bargainer drew an inference that Plaintiff would be harmed. By not providing any information that Bargainer knew of the disagreement between the two parties, it is

impossible to establish an inference was actually drawn. As to the third element, Plaintiff did not demonstrate through evidence that Bargainer had a sufficiently culpable state of mind, knowing that the other inmates and Plaintiff had an ongoing feud and disregarded a risk to Plaintiff. As such, it cannot be established that Bargainer, equipped with knowledge of a feud, sought to disregard Plaintiff's health and well-being.

For of the reasons stated above, Plaintiff's Complaint does not meet the objective or subjective requirements necessary to make a valid Eighth Amendment Claim. Therefore, Defendants' Motion to Dismiss this claim should be **GRANTED.**

### 3. Due Process Violation

Plaintiff argues that he was deprived of certain rights, privileges, and immunities secured under the Fourteenth Amendment, specifically the right to substantive due process, as a result of Defendants actions. (Doc. 1 at 7-8.) Defendants argue that Plaintiff fails to establish the existence of a liberty interest and provides no facts to support his due process claim. (Doc. 23-1 at 14.)

The Fourteenth Amendment provides that "[n]o state shall…deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. Of Regents v. Roth, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." Wright v. Riveland, 219 F.3d 905, 913 (9th Cir. 2000). A liberty interest may result from an expectation or interest created by state laws or policies or from the Constitution itself, by reason of guarantees implicit in the word "liberty." Wilkinson v. Austin, 545 U.S. 209, 221 (2005).

///

///

///

Here, Plaintiff has not alleged facts sufficient to demonstrate a procedural violation of due process. Plaintiff's filings are, once again, conclusory and do not identify what specific constitutionally protected liberty interest was infringed upon. Plaintiff does not provide a liberty interest clearly written in the Constitution, nor a state law or policy that gives rise to a protected liberty interest. As a result, Plaintiff does not fulfill the necessary first factor of the test for a due process violation. As Plaintiff has not alleged a specific procedural due process violation in his Complaint, it is then impossible to demonstrate that Defendants deprived him of this interest, or a lack of process.

As a result of the aforementioned reasons, Defendants' Motion to Dismiss the due process violation claim should be **GRANTED**.

### 4. Involvement in Inmate Appeal Process

Plaintiff argues that Defendants Chavez and Montgomery's involvement in Plaintiff's appeal process violated his right to due process. (Doc. 1 at 17-18.) Defendants argue that Chavez and Montgomery's employment as Wardens during Plaintiff's inmate appeal process and that their involvement in Plaintiff's appeal process does not violate Plaintiff's right to due process. (Doc. 23-1 at 15.)

"Prison officials are not required to process inmate appeals in a specific way or respond to them in a favorable manner." De Bose v. Schmidt, No. 2:15-cv-1076-EFB (TEMP) P, 2016 U.S. Dist. LEXIS 75504, at *3 (E.D. Cal. June 9, 2016). "Inmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003).  A prisoner is entitled to the procedural right of a grievance process, but this does not then bestow upon the prisoner any substantive right. Rios v. Paramo, No. 14cv1073-WQH (DHB), 2015 U.S. Dist. LEXIS 117271, at *155 (S.D. Cal. June 29, 2015).  A prison official's denial of an inmate's grievance or appeal from a misconduct finding generally does not constitute significant participation in an alleged constitutional violation sufficient to give rise to personal liability. See Wilson v. Woodford, 2009 U.S. Dist. LEXIS 25749, 2009 WL 839921, *6 (E.D. Cal. 2009).

14-cv-709-GPC-PCL

Here, the ruling denying Plaintiff's appeal has no impact on the underlying claims being made by Plaintiff. Any rulings made against Plaintiff throughout the appeal process do not contribute to a claim against Chavez and Montgomery. Chavez and Montgomery's involvement in the administrative appeal process has no bearing on Plaintiff's initial allegations and does not result in a constitutional violation of a protected liberty interest.

Further, Plaintiff alleges no facts that demonstrate how Chavez and Montgomery's involvement in the administrative appeal process could result in a Constitutional violation. Plaintiff makes conclusory statements without providing any information as to how his Constitutional rights were violated.

For the aforementioned reasons, Defendants' Motion to Dismiss as to the appeals process should be **<u>GRANTED</u>**.

### 5. Establishing Conspiracy Under the Federal Civil Rights Act (42 U.S.C. § 1985).

Plaintiff argues that individual Defendants conspired with certain inmates to teach Plaintiff a lesson. He alleges Defendants Montgomery and Chavez conspired in regard to the preparation of false reports, both in an attempt to deprive Plaintiff of his civil rights in accordance with § 1985. (Doc. 1 at 9-10.) Defendants argue that Plaintiff fails to identify any factual basis for conspiracy to violate Plaintiff's civil rights and fails to allege a valid claim for conspiracy under, 42 U.S.C. § 1985. (Doc. 23-1 at 15.)

To recover under § 1985, a plaintiff must prove: "(1) a conspiracy; (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act by one of the conspirators in furtherance of the conspiracy; and (4) a personal injury, property damage, or a deprivation of any right or privilege of a citizen of the United States." <u>Gillespie v. Civiletti</u>. 629 F.2d 637, 641 (9th Cir. 1980) (citing <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102-103 (1971)).

Further, "[a] claim under [§ 1985] must allege facts to support the allegation that defendants conspired together." <u>Karim-Panahi</u>, 839 F.2d at 626.  A mere allegation of conspiracy without factual specificity is insufficient." <u>Id.</u> To be liable, each participant in

1  the conspiracy must share the common objective of the conspiracy. <u>United States</u>

2  <u>Steelworks of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540-1541 (9th Cir. 1089) (en

3  banc).

4        Additionally, to deprive any person or a class of persons of the equal protection of

5  the laws, or of equal privileges or immunities under the laws "there must be some racial,

6  or perhaps otherwise class-based, invidiously discriminatory animus behind the

7  conspirators' action." <u>Griffin</u>, 403 U.S. at 102.

8        Here, Plaintiff did not provide any factual basis regarding an alleged attempt to

9  conspire. All four elements of conspiracy must be proven by Plaintiff in order to recover,

10  however Plaintiff alleges no facts to support any of the four elements. Instead, Plaintiff

11  simply states that Defendants conspired to put Plaintiff in a dangerous situation and then

12  conspired against him during the administrative appeal process. (Doc. 1 at 9-10.) Plaintiff's

13  mere allegation of conspiracy without a factual basis is insufficient. Additionally, Plaintiff

14  provides no factual proof that Defendants shared a common objective of conspiracy.

15        Plaintiff has not sufficiently alleged that Defendants deprived him of the equal

16  protection of the laws. Plaintiff needed to demonstrate some racial or class-based invidious

17  discriminatory animus behind their actions. Plaintiff provided no such proof and instead

18  simply stated that a conspiracy occurred. Additionally, Plaintiff provided no information

19  that alleges Defendants' intentions behind the initial fight or Defendants' involvement in

20  the administrative appeal. Plaintiff provided little detail as to the extent of his injury or how

21  his injuries were the result of Defendants' direct action.

22        As a result, Defendants' motion alleging a conspiracy should be **<u>GRANTED</u>**.

23        <u>B. Failure to Exhaust Administrative Remedies</u>

24        Plaintiff claims that he exhausted all administrative remedies before filing the

25  Complaint for the same claims. (Doc. 1 at 6-7.) Defendants claim that Plaintiff's failure to

26  exhaust administrative remedies prior to filing a Complaint is clear on the face of the

27  Complaint. (Doc. 23-1 at 11-12.)

28

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before filing a §1983 action in federal court. 42 U.S.C. § 1997e(a). "The obligation to exhaust available remedies persists as long as *some* remedy remains 'available.'" <u>Brown v. Valoff</u>, 422 F.3d 926, 935 (9th Cir. 2005) (quoting <u>Booth v. Churner</u>, 532 U.S. 731, 739-41 (2001)). Once that is no longer the case, then there are no 'remedies…available,' and the prisoner need not further pursue the grievance." <u>Id</u>.

The Ninth Circuit has held that "defendants have the burden of raising and proving the absence of exhaustion." <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003) (overruled on other grounds). This burden requires defendants to demonstrate that the inmate has failed to pursue some avenues of "available" administrative relief. <u>Brown</u>, 422 F.3d at 936-37. Because "failure to exhaust is an affirmative defense under the PLRA, and …inmates are not required to specially plead or demonstrate exhaustion in their complaints," the defendant in a typical PLRA case will have to present probative evidence that the prisoner has failed to exhaust available administrative remedies under § 1997e(a). <u>Albino v. Baca</u>, 747 F.3d 1162, 1169 (9th Cir. 2014).

If in the rare case where a prisoner's failure to exhaust is clear from the face of the complaint, a "defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim." <u>Id</u>. However, in the vast majority of cases, a motion for summary judgment under FRCP 56 is the appropriate avenue for deciding exhaustion issues. <u>Id</u>. Although "disputed factual questions relevant to exhaustion should be decided at the very beginning of the litigation," the plaintiff should be afforded the post-answer discovery process when appropriate after a defendant has pled the affirmative defense of failure to exhaust administrative remedies. <u>Id</u>. at 1171.

Here, based on the facts outlined in the Complaint and the attached Exhibits, Plaintiff did exhaust all administrative remedies before filing his suit. Plaintiff filed an initial 602 inmate grievance with the CDCR on the issues presented in this case. (Doc. 1 at 36-38) When Plaintiff's initial grievance was denied by the Department of Corrections, he then proceeded to file first, second, and third level appeals. (Doc. 1 at 15-34: 43-48.) It was not

until the third level appeal decision by the CDCR that Plaintiff filed a Complaint with this Court. Plaintiff fully exhausted all possible administrative remedies through the use of this appeals process prior to filing his Complaint and then included this information in his Complaint and attached exhibits.

The burden falls upon Defendants to demonstrate that Plaintiff did not fully exhaust all of his possible administrative remedies. Defendants raised this issue in the instant motion, but asserted that Plaintiff's failure to exhaust is evident on the face of the Complaint. (Doc. 23-1 at 16-19.) Defendants' argument fails. It is not evident on the face of the Complaint that Plaintiff failed to exhaust administrative remedies. Plaintiff provided his CDCR appeals as exhibits to the Complaint, which detail his attempts to resolve the matter through the CDCR administrative system. Defendants needed to proffer probative evidence that demonstrates how Plaintiff failed to pursue other avenues of administrative relief. As this was not delivered, Defendants did not provide sufficient evidence of a failure to exhaust administrative remedies.

As such, Defendants' Motion to Dismiss for failure to exhaust is **<u>DENIED</u>**.

C. Improper Service

A district court has broad discretion to dismiss an action entirely for failure to effect proper service. <u>Jones v. Auto. Club of S. Cal.</u>, 26 F. App'x 740, 742 (9th Cir. 2002). Substantial compliance with service of process requirements and actual notice are generally fail to establish service sufficient enough to withstand a discretionary dismissal for lack of service. <u>Id.</u>

Here, while Defendant has not moved to dismiss the Complaint for lack of service, the Court finds that Plaintiff has failed to effect proper service on all defendants. Following a set aside default judgment, Plaintiff was ordered to serve the Complaint by January 14, 2016. (Doc. 10.) Plaintiff has provided proof of service that Manuel Rositas served Defendants Hatfield, Chavez, Lara, Imada, Bargainer, Drake, Montgomery, and Calipatria State Prison with the Complaint and summons on January 13, 2016. (Docs. 13-19, 21.)

14-cv-709-GPC-PCL

Service was effected at 9:40 a.m. by serving Gloria Rodriguez, a staff member at Calipatria authorized to accept service. (Id.)

Despite executed returns for Bargainer and Imada, Defendants' Motion to Dismiss indicates that as of February 3, 2016, those individuals had not yet been served, directly conflicting with Plaintiff's docketed service returns. (Doc. 23-1 at 8.) Additionally, Defendants Bell, Beard, Hopper, and Janda remain unserved. Plaintiff offered no rebuttal to Defendants' assertion that Bargainer, Imada, Bell, Beard, Hopper, and Janda have not been served. Plaintiff has failed to serve almost half of the defendants named in the Complaint, more than six months after the deadline to do so and such a delay would amount to less than permissible substantial service. As a result, dismissing the Compliant as to the unserved Defendants is not an abuse of discretion.

## V. CONCLUSION

While Defendants' exhaustion argument is lacking, all of Plaintiff's claims may be dismissed for want of supporting facts. As a result, while the claims can be properly brought before this Court, they do not hold sufficient merit to continue to be pursued. For the foregoing reasons, the court **RECOMMENDS** that Defendants' Motion to Dismiss for failure to state a claim, immunity, and failure to exhaust administrative remedies be **GRANTED** in part and **DENIED** in part.

Further, this Court **RECOMMENDS** that the claims be dismissed to the remaining Defendants not a party to this motion for lack of proper and timely service.

**IT IS ORDERED** that no later than August 25, 2016, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

///

///

///

///

///

16

1    **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with

2    the Court and served on all parties no later than September 8, 2016. The parties are advised

3    that failure to file objections within the specified time may waive the right to raise those

4    objections on appeal of the Court's order. See <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th

5    Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156 (9th Cir. 1991).

6

7    **IT IS SO ORDERED.**

8    Dated:  August 11, 2016

9    _____

10   Hon. Peter C. Lewis

11   United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28